UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRADLEY KYLE HENSON,<br><br>    Petitioner,<br><br>    v.<br><br>RICHARD KIRKLAND, Warden,<br><br>    Respondent. | 1:06-CV-01170 AWI SMS HC<br><br>FINDINGS AND RECOMMENDATION REGARDING PETITION FOR WRIT OF HABEAS CORPUS |

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

**BACKGROUND**

Petitioner is currently in the custody of the California Department of Corrections pursuant to a judgment of the Superior Court of California, County of Kern, following his conviction by jury trial on September 14, 2004, of transportation of heroin (Cal. Health & Saf. Code § 11352(A)) and possession of heroin (Cal. Health & Saf. Code § 11350(A)). (LD[1] 1; CT[2] 252.) In a bifurcated trial, the jury also found true allegations that Petitioner had suffered two prior convictions for assault and had served two prior prison terms. (CT 227-231.) On October 13, 2004, Petitioner was sentenced to

---

[1] "LD" refers to the documents lodged by Respondent with his motion to dismiss.

[2] "CT" refers to the Clerk's Transcript on Appeal.

1  serve a total determinate term of twelve years in state prison. (CT 250-252, 254.)

2        Petitioner filed a notice of appeal. On October 21, 2005, the California Court of Appeal, Fifth
3  Appellate District (hereinafter "Fifth DCA"), affirmed the judgment. (LD 1.) He then filed a petition
4  for review in the California Supreme Court. (LD 5.) On January 4, 2006, the petition was summarily
5  denied. (LD 6.)

6        On September 5, 2006, Petitioner filed a petition for writ of habeas corpus in the Kern
7  County Superior Court. (LD 7.) On November 3, 2006, the petition was denied. (LD 8.)

8        On August 30, 2006, Petitioner filed the instant petition for writ of habeas corpus. Petitioner
9  presents the following grounds for relief: 1) "Double jeopardy, transportation of heroin, and
10 possession of heroin are in one case of transportation"; 2) "Upper term was imposed without the
11 jury's recommendation on sentencing requires [sic] factual findings, ineffective assistance of
12 counsel"; and 3) "To quash and traverse warrant and suppress evidence, and unseal affidavit, new
13 evidence." On February 7, 2007, Respondent filed an answer to the petition. Petitioner did not file a
14 traverse.

15 **FACTUAL BACKGROUND**[3]

16       On June 17, 2004, the Kern Narcotic Enforcement Team (KNET) was following Petitioner in
17 the belief he was carrying illegal narcotics. Petitioner had a suspended driver's license, the
18 registration for his 1970 Volkswagen Beetle had expired two years earlier, and he was known to be
19 on probation, the conditions of which allowed for warrantless searches. At the request of KNET
20 Officer Ben Herrera, the Bakersfield Police Department had patrol officers pursue Petitioner with the
21 lights and sirens of their vehicles activated. KNET members joined the slow-speed pursuit in
22 unmarked vehicles. KNET Sergeant Joseph Bianco drove alongside Petitioner's Beetle for 15-20
23 seconds and Bianco saw Petitioner move forward in his seat and make movements with his arm.
24 Bianco believed Petitioner was trying to conceal something on his person or within the car.

25       The officers pursued Petitioner for approximately one mile along South Union Avenue north
26 of Planz Road. The 1970 primer gray Volkswagen Beetle eventually stopped and officers found

27
28     [3]The facts are derived from the factual summary set forth in the Fifth DCA opinion of October 21, 2005. (LD 1 at pp. 3-5.

Petitioner in the driver's seat and one Joe Flowers in the passenger seat. Officers searched both Petitioner and Flowers and the interior of the automobile, found no narcotics, and took Petitioner and Flowers into custody. At the Bakersfield police station, Bakersfield Police Officer Moore advised Petitioner that officers believed "he had hidden some narcotics in his rectum area." Petitioner responded that "if he was going to give up the item that [sic] how would he beat the rap."

Officer Herrera prepared and obtained a body cavity search warrant while other officers transported Petitioner to Kern Medical Center. Herrera met them at the medical center and advised Petitioner he had a body cavity search warrant for Petitioner's person. At that point, Petitioner admitted he had approximately one-quarter ounce of heroin concealed in his rectum. Petitioner told Officer Moore he would push the heroin out of his rectum. Medical personnel gave Petitioner two liquids and said he needed to drink both of them. The personnel said if Petitioner did not drink the substances "they were going into his body."

Petitioner was then placed on a "Porta-Potty" in the presence of Officer Moore, Officer Herrera, and Probation Officer Geronimo. He excreted a green balloon about the size of a golf ball and a Chapstick tube. Officer Herrera examined the contents of the balloon and found 36 smaller balloons of what he believed to be heroin. He also opened the Chapstick tube and found what he believed to be heroin. Alison High Kennedy, a criminalist with the Kern County Regional Crime Laboratory, analyzed the contents of the balloons and the tube and concluded they contained usable amounts of heroin.

**DISCUSSION**

**I. Jurisdiction**

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375 fn.7 (2000). Petitioner asserts that he suffered violations of his rights as guaranteed by the U.S. Constitution. In addition, the conviction challenged arises out of the Kern County Superior Court, which is located within the jurisdiction of this court. 28 U.S.C. § 2254(a); 2241(d). Accordingly, the Court has jurisdiction over the action.

1    On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320 (1997), *cert. denied,* 522 U.S. 1008 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997), *quoting* Drinkard v. Johnson, 97 F.3d 751, 769 (5th Cir.1996), *cert. denied,* 520 U.S. 1107 (1997), *overruled on other grounds by* Lindh v. Murphy, 521 U.S. 320 (1997) (holding AEDPA only applicable to cases filed after statute's enactment). The instant petition was filed after the enactment of the AEDPA; thus, it is governed by its provisions.

## II.  Legal Standard of Review

This Court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

The instant petition is reviewed under the provisions of the Antiterrorism and Effective Death Penalty Act which became effective on April 24, 1996. Lockyer v. Andrade, 538 U.S. 63, 70 (2003). Under the AEDPA, an application for habeas corpus will not be granted unless the adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding." 28 U.S.C. § 2254(d); see Lockyer, 538 U.S. at 70-71; see Williams, 529 U.S. at 413.

As a threshold matter, this Court must "first decide what constitutes 'clearly established Federal law, as determined by the Supreme Court of the United States.'" Lockyer, 538 U.S. at 71, *quoting* 28 U.S.C. § 2254(d)(1). In ascertaining what is "clearly established Federal law," this Court must look to the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." Id., *quoting* Williams, 592 U.S. at 412. "In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." Id.

Finally, this Court must consider whether the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law." Lockyer, 538 U.S. at 72,

1 *quoting* 28 U.S.C. § 2254(d)(1). "Under the 'contrary to' clause, a federal habeas court may grant the
2 writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a
3 question of law or if the state court decides a case differently than [the] Court has on a set of
4 materially indistinguishable facts." Williams, 529 U.S. at 413; see also Lockyer, 538 U.S. at 72.
5 "Under the 'reasonable application clause,' a federal habeas court may grant the writ if the state
6 court identifies the correct governing legal principle from [the] Court's decisions but unreasonably
7 applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413.

8     "[A] federal court may not issue the writ simply because the court concludes in its
9 independent judgment that the relevant state court decision applied clearly established federal law
10 erroneously or incorrectly.  Rather, that application must also be unreasonable." Id. at 411.  A
11 federal habeas court making the "unreasonable application" inquiry should ask whether the state
12 court's application of clearly established federal law was "objectively unreasonable." Id. at 409.

13     Petitioner has the burden of establishing that the decision of the state court is contrary to or
14 involved an unreasonable application of United States Supreme Court precedent. Baylor v. Estelle,
15 94 F.3d 1321, 1325 (9th Cir. 1996).  Although only Supreme Court law is binding on the states,
16 Ninth Circuit precedent remains relevant persuasive authority in determining whether a state court
17 decision is objectively unreasonable.  See Duhaime v. Ducharme, 200 F.3d 597, 600-01 (9th
18 Cir.1999).

19     AEDPA requires that we give considerable deference to state court decisions. The state
20 court's factual findings are presumed correct, 28 U.S.C. § 2254(e)(1), and we are bound by a state's
21 interpretation of its own laws. Souch v. Schaivo, 289 F.3d 616, 621 (9th Cir.2002), *cert. denied*, 537
22 U.S. 859 (2002), *rehearing denied*, 537 U.S. 1149 (2003).

23 **III.  Review of Petition**
24     **A.  Ground One**
25     In his first claim for relief, Petitioner alleges his conviction violates the Double Jeopardy
26 Clause of the Constitution because transportation of heroin necessitates possession of heroin.
27 Because the two crimes share the same requirements, he argues he cannot be convicted of both.
28     This claim was first presented on direct appeal to the Fifth DCA.  The Fifth DCA denied the

claim in a reasoned opinion. (LD 1.) Petitioner then presented the claim in a petition for review to the California Supreme Court, where it was summarily denied. (LD 5,6.) The California Supreme Court, by its "silent order," is presumed to have denied the claims presented for the same reasons stated in the opinion of the lower court. Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991).

The Fifth DCA first noted the rule that multiple convictions cannot be based on necessarily included offenses, and a necessarily included offense is one that is necessarily committed when another offense is committed. (LD 1 at p. 5.) The Fifth DCA then determined that under California law, possession of heroin is not a necessarily included offense of transportation of heroin, because possession is not an essential element of transportation. (LD 1 at p. 8) The Fifth DCA cited another California appellate decision which had determined the offense of transportation could be committed without necessarily committing the offense of possession because "[o]ne can transport drugs without necessarily being in possession of the drugs." (LD 1 at p. 8)

The Double Jeopardy Clause provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const., Amdt. 5. "This protection applies both to successive punishments and to successive prosecutions for the same criminal offense." United States v. Dixon, 509 U.S. 688, 695-96 (1993). In the contexts of multiple punishment and multiple prosecution, the Supreme Court has concluded that where the two offenses for which the defendant is punished or tried cannot survive the "same-elements" test, the double jeopardy bar applies. Id. at 696; see, e.g., Brown v. Ohio, 432 U.S. 161, 168-169 (1977); Blockburger v. United States, 284 U.S. 299, 304 (1932) (multiple punishment); Gavieres v. United States, 220 U.S. 338, 342 (1911) (successive prosecutions). "The same-elements test, sometimes referred to as the Blockburger test, inquires whether each offense contains an element not contained in the other; if not, they are the "same offence" and double jeopardy bars additional punishment and successive prosecution." Dixon, 509 U.S. at 696.

In this case, the state court reasonably determined that Petitioner's conviction was not double jeopardy, because Petitioner did not have to be in possession of heroin to have committed the offense of transportation of heroin. For example, had the heroin been found on Petitioner's co-defendant's person, Petitioner could have been convicted of transportation but not necessarily possession.

1  Consequently, the appellate court's decision was not objectively unreasonable and the claim should
2  be denied.

### B. Ground Two

4  In his next claim for relief, Petitioner alleges the trial court violated the Sixth Amendment by
5  selecting the upper term based on aggravating factors not found by the jury or admitted by him. He
6  claims his sentence cannot stand in light of the Supreme Court decisions in <u>Blakely v. Washington</u>,
7  542 U.S. 296 (2004) and <u>Apprendi v. New Jersey</u>, 530 U.S. 466, 490 (2000).

8  This claim was also presented on direct appeal to the Fifth DCA and rejected in a reasoned
9  opinion. (LD 1 at p. 9.) It was then presented to the California Supreme Court where it was
10 summarily denied. (LD 5,6.) The California Supreme Court is presumed to have denied the claims
11 presented for the same reasons stated in the opinion of the lower court. <u>Ylst</u>, 501 U.S. at 803.

12 In rejecting this claim, the Fifth DCA rejected the claim based on the California Supreme
13 Court's decision in <u>People v. Black</u>, 35 Cal.4th 1238, 1244 (2005), wherein the court held that "the
14 judicial factfinding that occurs when a judge exercises discretion or imposes an upper term sentence
15 or consecutive terms under California law does not implicate a defendant's Sixth Amendment right
16 to a jury trial."

17 The California Supreme Court's decision in <u>Black</u> has since been abrogated by <u>Cunningham</u>
18 <u>v. California</u>, 549 U.S. 270, 127 S.Ct. 856 (2007). In <u>Cunningham</u>, the Supreme Court determined
19 that California's determinate sentencing law ("DSL") violates a defendant's right to jury trial under
20 the Sixth and Fourteenth Amendments by placing sentencing-elevating factfinding within the judge's
21 province. <u>Id.</u> at 857. Nevertheless, in this case Petitioner's claim should be rejected because the trial
22 court did not impose the upper term based on its findings, but the jury's. In imposing the upper term,
23 the court relied on the following factors: 1) Petitioner's prior convictions as an adult and sustained
24 petitions as a juvenile; 2) Petitioner was on misdemeanor probation at time crime was committed;
25 and 3) Petitioner's performance on all past grants of probation and parole have been unsatisfactory.
26 As noted by Respondent, a defendant does not have a constitutional right to jury trial for a sentence
27 increase based on the fact of his prior conviction. <u>Almandarez-Torres v. United States</u>, 523 U.S. 224,
28 246 (1998); <u>Apprendi v. New Jersey</u>, 530 U.S. 466, 488 (2000).

Moreover, Petitioner pleaded guilty to the misdemeanor, and it was the jury which found true the allegations that Petitioner had two prior convictions for assault and had served two prior prison terms. Therefore, the claim is meritless because it was not the trial court's factfinding which led to the imposition of the upper term, but the jury's.

In a subclaim to this ground for relief, Petitioner claims his attorney was ineffective in failing to raise this argument at trial. Ineffective assistance of counsel is based on the Sixth Amendment right to counsel, which exists "in order to protect the fundamental right to a fair trial." Strickland v. Washington, 466 U.S. 668, 684, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)). A claim for ineffective assistance must meet the two-part test advanced by the Strickland court. First, petitioner must show that counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, [petitioner] must show that the deficient performance prejudiced the defense. Id. at 687. Here, Petitioner cannot demonstrate error on the part of trial counsel or prejudice resulting therefrom, because as shown above, the upper-term sentence did not violate Petitioner's constitutional rights.

**C.  Ground Three**

In his final claim, Petitioner contends the search warrant executed in this case violated his Fourth Amendment rights.

Respondent first argues the claim is unexhausted because it was not presented to the highest state court. See 28 U.S.C. § 2254(d)(1). The Court has reviewed the state court pleadings and finds Respondent's argument to be correct. The claim is unexhausted. Nevertheless, Respondent requests the claim be rejected on the merits. Pursuant to 28 U.S.C. § 2254(b)(2), the Court is authorized to deny a claim if it is plainly meritless. In this case, the Court will do so.

A federal district court cannot grant habeas corpus relief on the ground that evidence was obtained by an unconstitutional search and seizure if the state court has provided the petitioner with a "full and fair opportunity to litigate" the Fourth Amendment issue. Stone v. Powell, 428 U.S. 465, 494 (1976); Woolery v. Arvan, 8 F.3d 1325, 1326 (9th Cir. 1993), *cert denied*, 511 U.S. 1057 (1994). The only inquiry this Court can make is whether petitioner had a fair opportunity to litigate his claim, not whether petitioner did litigate nor even whether the court correctly decided the claim.

Ortiz-Sandoval v. Gomez, 81 F.3d 891, 899 (9th Cir. 1996); see also, Gordon v. Duran, 895 F.2d 610, 613 (9th Cir. 1990) (holding that because Cal. Penal Code § 1538.5 provides opportunity to challenge evidence, dismissal under Stone was necessary).

The policy behind the Stone Court's analysis is that the exclusionary rule is applied to stop future unconstitutional conduct of law enforcement.  Stone, 428 U.S. at 492.  However, excluding evidence that is not untrustworthy creates a windfall to the defendant at a substantial societal cost. See Stone, 428 U.S. at 489-90; Woolery, 8 F.3d at 1327-28.  Thus, the Ninth Circuit has described the rationale for this rule by saying:

> The holding is grounded in the Court's conclusion that in cases where a petitioner's Fourth Amendment claim has been adequately litigated in state court, enforcing the exclusionary rule through writs of habeas corpus would not further the deterrent and educative purposes of the rule to an extent sufficient to counter the negative effect such a policy would have on the interests of judicial efficiency, comity and federalism.

Woolery, 8 F.3d at 1326; see also  Stone, 428 U.S. at 493-494.

In this case, Petitioner had a full and fair opportunity to litigate his Fourth Amendment claim. (CT 100.) Pursuant to Stone v. Powell, the Court cannot grant habeas relief.

**RECOMMENDATION**

Accordingly, the Court RECOMMENDS that the petition for writ of habeas corpus be DENIED. It is FURTHER RECOMMENDED that the Clerk of Court be DIRECTED to enter judgment for Respondent.

This Findings and Recommendation is submitted to the Honorable Anthony W. Ishii, United States District Court Judge, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Rule 72-304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within thirty (30) days (plus three days if served by mail) after being served with a copy, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation."  Replies to the objections shall be served and filed within ten (10) court days (plus three days if served by mail) after service of the objections.  The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636(b)(1)(C).  The parties are advised that failure to file objections within the specified

1  time may waive the right to appeal the District Court's order. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th
2  Cir. 1991).
3  IT IS SO ORDERED.
4  **Dated:   July 21, 2008**                                       <u>/s/ Sandra M. Snyder</u>
                                                                    UNITED STATES MAGISTRATE JUDGE